Metadata Solutions, Inc. v. VIVA Systems Thank you. Good morning, Your Honors. Metadata concedes that the claims VIVA seeks to arbitrate are intertwined with the contract containing the arbitration agreement. And here it would be, under the fact-specific equitable estoppel analysis required by this Court, it would be unfair for Metadata to avoid its contractual arbitration requirements where it forced its U.S.-based employees to sign employment agreements that contain broadly worded arbitration clauses that sought to specifically regulate their post-employment conduct, including their— Excuse me, Mr. Tillery. Is there an arbitration pending against the employees, or did Metadata just abandon any effort to enforce these contracts directly against the employees, or do you not know? All I know is what happened procedurally is that— What happened in this case, which is they sued the employees and then they dropped that suit. That's correct. There is no currently pending arbitration against the employees. That's what I was asking. You do know that they're not pursuing that at least at this moment in either form. That's correct, Your Honor, but the employees were dismissed without prejudice such that these claims could certainly be brought in arbitration against the employees at any time, including— Well, and so why do you say they are evading their obligation to, under the contract, to arbitrate the dispute with the employees? They either have abandoned those claims or they're going to pursue them in arbitration. What are they avoiding? Well, Your Honor, the complaint as filed initially named the former employees as defendants. That complaint included their pictures, their profiles, their employment contracts. It also— Well, if the employees want to sue for abuse of process or something like that and say that this complaint was filed in bad faith just to smear them with no intention to pursue it, they could do that, I suppose, and they'd win or lose, and that would go on. I guess the real issue here, isn't it, is whether your relationship with those employees as their employer entitles you, your client, to arbitrate. That's what we're talking about here, right? That's correct, Your Honor. I think more broadly it's the relationship between VIVA, metadata, and the former employees. You don't have a relationship with metadata. That's the problem, right? Your relationship with them is competitor. That is correct, Your Honor. There is an underlying business relationship between VIVA and metadata, but that is, I don't think, an issue in this appeal. The issue here— Are you claiming that the alliance that's described in the complaint is a basis for that relationship between the two companies? I am not, Your Honor. What's the ongoing relationship, then? I'm simply commenting that there is this relationship between VIVA and metadata. We are not arguing—it is alleged in the complaint—we are not arguing here today that it is relevant to this motion of arbitration. There's no relationship that's relevant? No, I believe that there is no relationship directly between VIVA and metadata that is relevant to this issue. There is a relationship between all of the parties relevant to this dispute, including the former employees. Your Honors, as you know, the law requires that the court look at the relationship not only between metadata and the former employees, but the relationship between VIVA and the former employees. In this case, metadata is seeking to litigate claims that are based on and, in fact, rely on alleged breaches of the arbitration provisions. How is that different than the Sokol case? Why does that case not control this one? Your Honor, I believe that the Sokol case has been interpreted as a bright-line rule that in any circumstance in which the alleged relationship arises out of alleged misconduct, equitable estoppel cannot apply. I apologize, Your Honor. I take your point that these cases of what constitutes the kind of relationship that would make it fair to allow a non-signatory to demand arbitration or be forced to arbitration, for that matter, are case-by-case. I don't know that you have to be that . . . that one has to interpret Sokol that broadly at all. It seems to me it's a case just like this one. Even if we're looking at it case-by-case, it's not just a question of alleged misconduct. It's a question of whether the situation in which one party is accused of tortiously interfering with the contract by hiring away employees and so on is the kind of relationship that qualifies. And Sokol says it didn't. And I'm trying to figure out how you would distinguish that case from this one. Sure. I think there are four important distinctions that I'd like to make. First, in Sokol, as in Ross, the only relationship between the signatory plaintiff and the non-signatory defendant arose out of allegedly tortious conduct. In Sokol, for example, that was an attempt to assail of a company. In this case, there is a broader employment relationship that is not inherently tortious. That relationship can exist outside of any claim of tortious conduct. And that is a significant difference. And second, there is nothing to suggest . . . So you'd be saying that the arbitration agreement concerned and should be governed by the nature of the claim, that there's an employment relationship and that has constraints that were breached. And so really, any party who comes in contact or that wants to challenge some element of the employment relationship should be subject to arbitration. Is that right? You're kind of looking at the subject matter as opposed to the parties? I think it is both. And the subject matter here relates to the individual employees. It relates to their alleged breaches of these underlying employment agreements. And unlike Sokol, the employment agreements here expressly contemplate and seek to regulate the employees' post-employment conduct, including their work for competitors. Thus, metadata expressly considered and contemplated that it would be litigating exactly this type of claim. Against those people, the employees, they made an agreement that any case . . . it seems to me that most of the cases in which we've said the non-signatory gets to play a role in the arbitration are cases like corporate affiliates, where it's almost just a technicality. The wrong corporation signed the agreement. And the parent or the sub or the affiliate is the one who's really involved in the dispute. And they're practically alter ego cases. Do you know of any case in which simply an employer-employee relationship was sufficient to let the employer invoke the employee's arbitration agreement where the employment relationship arose after? In other words, it wasn't that the employee signed the arbitration agreement with somebody in effect on behalf of his employer, but a case where an agreement that was created after the fact let the employer claim the employee's arbitration rights. There are no cases, I believe, in this circuit that have decided that issue. There are cases in other courts that have decided that exact issue. And again, this is an individual . . . But what's the strongest case outside of this circuit for the invocation of an arbitration clause in a former employer, new employer kind of situation? There is a case in the District of New Jersey called Precision Funding Group versus National Fidelity Mortgage that deals with this exact issue. There is another case called . . . Do you have a site for that? Yes, I do. I apologize, Your Honor. It's a Westlaw . . . It's not a published case. So it's 2013 Westlaw 2404151. And it's cited at page 46 of Appellate's opening brief. Okay, thank you. One question before you sit down. Would you agree that by filing your second amended complaint, your first appeal as to the original complaint is mooted, that that is not really before us now? I agree . . . Yes, I agree that the complaint is mooted. But indeed, the second amended complaint includes additional allegations against the employees that lie at the heart of this dispute, namely their alleged failure to return metadata documents in their personal possession. And those documents now lie . . . are the source of the trade secrets alleged by metadata. Again, this only further goes to show that this case is really about the employee's conduct. They are now being dragged through . . . I'm just asking about the operative complaint for purposes of the appeal. There were two appeals filed. And my view is that the second appeal of the second amended complaint is the operative one. And I'm asking whether you agree with that. I agree with that, Your Honor. The parties have agreed that their original briefing on the first amended complaint is equally applicable to the second amended complaint. Very good. Okay, we'll hear from Ms. Ray. Good morning, Your Honors. In this case, the Court can and should affirm the District Court's decision below because it's entirely consistent with this Court's prior jurisprudence, both in Sokol v. Munai and Ross v. American Express. In this case, simply put, the only relationship with VIVA is with the employees. It has no relationship with metadata and it has no relationship with the contracts at issue. As Ross would put it, VIVA is a complete stranger to those employment agreements. When you look at the Sokol case, it talks about a very, I think, useful framework. In Sokol, the Court looked at the parties there and said that where you have a signatory X who is bringing claims and a non-signatory Y1 who is seeking to compel arbitration of those claims, you have to look at the relationships and where there's another signatory Y. How did Y1 come into the picture? In Sokol, there was an oil and gas lease in Kazakhstan. There was an employment relationship there that arose after the contract was entered into between X and Y. X and Y had a contract. Y turned around and entered into a relationship with Y1, the BNB defendants. The BNB defendants actually hired Y, the former signatory, as their general manager of their oil and gas project in Kazakhstan. The Sokol court said where the only relationship that the non-signatory has is with another signatory whose breach it has induced, even where there's an employment relationship, that's not sufficient to compel X to arbitrate its claims. The non-signatory defendants there could not compel arbitration because their only relationship was a product of their own tortious interference with that contract. That they were now the employer of the one whose breach they had induced did not change the analysis. This case is just like that. And as the court said there, if you were to allow VIVA to compel arbitration of claims here, where it comes along later, it had no relationship with metadata at the time of contracting. There are only three former employees who had arbitration. I appreciate it had no relationship with the employees either at that time. It had a relationship with them at the time of contracting. VIVA did not even exist at the time two of the three contracts were entered into. Two of them were prior to VIVA's existence. One of them was only a year after it existed. So it could not have been the case that metadata would ever have thought that VIVA, which was never a prospective employer or anything with respect to these employees, was somebody it would have had to arbitrate with. You can imagine a situation in a small industry where there might actually have been a future employer who was named in a non-compete provision. You cannot go work for this entity. In that situation one might say it would be fair to say that you have to arbitrate claims with that entity. That's not this situation. There is no relationship with VIVA here that existed with the contract or with metadata. And thus it's not fair to ask metadata to be used. As I mentioned, Your Honors, this is also consistent with Ross. The court there was very focused both on the relationship with the entity bringing the claims who would be estopped and with the contract. It's also consistent with this court's jurisprudence in cases where it did find that equitable estoppel applied. For example, in Astor Oil v. Rover from 2003, then Judge, now Justice Sotomayor, applied the same reasoning that is applied in Sokol, looking at the relationship and finding there that where the non-signatory Y won had actually negotiated the contract at issue on behalf of the signatory Y and had been called upon to perform under it by X. There, there was a close relationship both with X and with the contract that warranted the application of equitable estoppel. That is not the situation here. How do you distinguish the Denny case where it seemed to say that just acting in concert was enough? In Denny, I would look at that case and say that, look at the relationship again. The non-signatories who were involved in that tax scheme all had a relationship at the outset. There were services that were being provided to the plaintiffs. They didn't have a corporate relationship. They didn't have a corporate relationship, but they were providers of services to the plaintiff investors who were investing in the tax scheme and claimed that they had losses. When you look at the case then on remand, it goes back and actually finds that there was no intertwinedness because that relationship was the contract was not sufficient and, in fact, on remand did not compel arbitration. One other case I'd like to mention, Your Honors, is the Ragone case, which the district court cited below from 2010, which builds on this court's reasoning in both Sokol and Ross. The court there looked and said where the individual plaintiff, Ragone, who had an employment agreement with Atlantic Video was seeking to avoid arbitration, ESPN could compel it because ESPN had actually been named in the contract, was known to be the person for whom Ragone was being hired to provide services, knew that she would be supervised by ESPN personnel, and, in fact, had had a working relationship with them that was known to her at the outset. When you look at Sokol, that knowledge and consent of the signatory acts is very important. What Viva's saying is essentially that a relationship between Viva as Y1 and the former employees as Y is sufficient to warrant estoppel even where there's no relationship with X. X could not have known of Y1, could never have consented. This is a very different situation from the cases that Viva itself relies on. With respect to the precision funding case in New Jersey that Viva mentions, that case actually applied a very different standard. The district court in New Jersey in precision funding looked only at whether there was a relationship with any contracting party, not with the contracting party who would be bound by equitable estoppel. That's quite a different test. Similarly, the other cases that Viva refers to in its briefs outside of the circuit do not apply the Second Circuit's test, which has been very consistently applied over many, many years through Sokol, through Ross, Astra, Choctaw, many of those cases, whether they compel arbitration or not, they are consistent in their reasoning and they require a relationship before someone is bound. Thank you. Thank you very much. Mr. Tillery, you've reserved three minutes. I have. Thank you, Your Honors. This is a situation in which these former employees who were forced to sign arbitration provisions are now being dragged through federal litigation. They are going to be deponents in this case. The case turns on whether they breached their employment agreements, the same agreements that contain the arbitration provision. The kicker is that they are still subject potentially to a separate arbitration of these same issues. Likely, if that is the case, metadata would seek to take facts that are found in the district court case and find that those are binding in the arbitration. That is unfair to the former employees. But you don't represent them. It seems to me those employees could make any number of claims. We alluded to one before. Maybe if there were some effort to arbitrate against them later, they could try to block that and say it's res judicata somehow. Maybe they could resist any effort to have adverse fact findings held against them and say they bargained for arbitration, not for being bound by what happens in court. But that's them. What I'm interested in is where does any of that give VIVA some kind of right? You see what I'm saying? The question is is it unfair not to allow metadata to bring its case in court against VIVA? Your Honor, VIVA employs these former metadata employees. The conduct is alleged to have happened under VIVA's guidance. These employees are agents of VIVA. VIVA is seeking to stand in the shoes of these employees and enforce arbitration of claims that no one disputes are arbitrable under these agreements, that the claims are intertwined with the underlying employment agreements. And this court in the Smith-Enron case... Is that entirely so, though? I mean, there's an allegation that there was tortuous interference by the new employer with the old relationship. And then there are different kinds of claims against the employees, that they took confidential information with them and then they used that in their new employment relationship. But some of the acts that the new employer took are really different from what the employees did. I mean, the result was that they came to the new employment, but what the new employer did to solicit them and to tortiously interfere are different kinds of activities. Why isn't that appropriate for judicial resolution in court? Your Honor, that's a very good question. And the issue here is that these claims cannot be resolved against VIVA without determining whether the employees breached an underlying agreement. Maybe the sole issue of whether there was interference, but all the other claims, the trade secret claims, you know, the host of other claims that are asserted here all clearly turn on the employees' alleged breach of contracts. But they're not entirely overlapping, is my point. Your Honor, I think they are based on the complaint that has been brought. The complaint focuses almost exclusively on the conduct of the former employees. And again, turns on whether they took confidential information and provided it to VIVA. That issue is subject to arbitration. And VIVA, I believe, as the employer of these employees, has a right to step into their shoes. But more importantly, this Court, if I may just finish, Your Honor, this Court in Smith-Enron has specifically found that the type of gamesmanship, the type suing a party who is not a signatory to a contract to resolve claims against a signatory is the type of gamesmanship that this Court abhors. And this is exactly what happened here. They sued the individual employees. And you understand that you've seen the complaint. Their pictures are in there. And as soon as VIVA said, hey, we're going to move to compel arbitration, VIVA and the former employees said, we're going to seek to compel arbitration, the employees were dismissed like that. Thank you very much. I think we have the arguments. Thank you. Okay. We'll reserve decision.